United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JOHN GABOR, et al.,

         Plaintiffs,

    v.

MIRIAM CARTER DESHLER, et al.,

         Defendants.

Case No. 17-CV-01524-LHK

**ORDER GRANTING WELLS FARGO'S MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING HARRIS AND HUMPHREY'S MOTION TO DISMISS**

Plaintiffs John Gabor ("John") and Kay Gabor ("Kay") (collectively, "Plaintiffs") sued Miriam Carter Deshler ("Deshler"), Lord & Carter Trust and Trustee Services, Rebecca Harris ("Harris"), Kristin Humphrey ("Humphrey"), and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, "Defendants"). The suit arises out of an alleged scheme in which Deshler helped Plaintiffs set up a trust, named herself as a trustee, and then withdrew without permission and never returned more than $1.3 million of Plaintiffs' savings. Appearing pro se, Plaintiffs assert eight causes of action against Deshler, Lord & Carter Trust and Trustee Services, Harris, and Humphrey, or some combination of them: fraud, promissory fraud, professional negligence, breach of fiduciary duty, elder abuse, "Civil Rico," conversion, and unjust enrichment. Plaintiffs

also assert a negligence cause of action against Wells Fargo. Before the Court are Wells Fargo's Motion to Dismiss, ECF No. 9, and Harris and Humphrey's Motion to Dismiss, ECF No. 12. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Wells Fargo's Motion to Dismiss with leave to amend and DENIES Harris and Humphrey's Motion to Dismiss. The Court further grants Plaintiffs leave to amend to name the proper parties in place of non-appearing Defendants Deshler and Lord & Carter Trust and Trustee Services.

## I.     BACKGROUND

### A. Factual Background

Plaintiff John Gabor, an 86-year-old resident of Campbell, California, served in the United States Air Force between 1950 and 1953, then worked as a professional wrestler until 1973. ECF No. 1 at ¶ 1 ("Compl."). After 1973, he worked as a long-haul trucker and a car dealer. *Id.* Plaintiff Kay Gabor, a 78-year-old resident of Campbell, California, worked in breeding, selling, and showing dogs. *Id.* ¶ 2.

Defendant Deshler, a citizen of Washington State, was a principal at Lord & Carter Trust and Trustee Services, which is also alleged to be a citizen of Washington State. *Id.* ¶ 3. Defendant Humphrey, a citizen of Washington State, is Deshler's daughter. *Id.* ¶ 5. Defendant Harris, also a citizen of Washington State, worked as Deshler's assistant at Lord & Carter Trust and Trustee Services. *Id.* ¶¶ 6, 9. Humphrey and Harris are married. *Id.* ¶ 7.

### 1. Establishment of the Blue Mountain Trust

Plaintiffs first met Deshler in 1989. At that time, Deshler was teaching law classes and giving seminars, presumably about financial or estate planning, to the public out of an office in San Jose, California. *Id.* ¶ 13. In the early 1990s, Plaintiffs had a dispute with the California Board of Equalization related to the collection of taxes on a dog breeding business. *Id.* ¶ 14. Deshler recommended that Plaintiffs put their assets into a trust. Throughout the 1990s Deshler helped Plaintiffs establish a series of trusts for their home, their cars, and other types of property.

2

*Id.*

In about January 2000, Kay opened a savings account at Wells Fargo. *Id.* ¶ 15. In 2000, Deshler established an irrevocable trust called the "Blue Mountain Trust." *Id.* ¶ 16. Presumably the Blue Mountain Trust was associated with Kay's Wells Fargo savings account. The Blue Mountain Trust had three trustees: Plaintiffs and Deshler. *Id.* Plaintiffs allege that Deshler told them that "the trust cannot be broken and that the money is totally safe." *Id.* By 2005, Plaintiffs had deposited their life's savings, about $1.3 million, into the Blue Mountain Trust. *Id.*

**2. Establishment of Other Trusts; Withdrawals from the Blue Mountain Trust**

On or about May 4, 2005, Deshler established the "Black Bear Storage Trust," naming herself as trustee. *Id.* ¶ 19. On July 18, 2005, Deshler transferred property located at 15005 E. Broadway Avenue in Spokane, Washington, into the Black Bear Storage Trust. *Id.* Plaintiffs do not specify what connection, if any, the Black Bear Storage Trust has to their claims.

On or about November 1, 2005, Deshler established the "Nebraska Hotel Historical Restoration Trust," naming herself as trustee. *Id.* ¶ 20. On December 7, 2005, the Nebraska Hotel Historical Restoration Trust bought the Nebraska Hotel, located at 5008, 5010, and 5012 North Market Street in Spokane, Washington. *Id.* Plaintiffs allege that Deshler used $170,000 from the Blue Mountain Trust to buy the Nebraska Hotel. *Id.* Plaintiffs allege that at an unspecified later time Deshler promised to put $200,000 back into the Blue Mountain Trust. *Id.* It is unclear from the Complaint whether she actually returned the $200,000. *Compare id.* (alleging that the money was never returned) *with id.* ¶ 45 (suggesting that $200,000 had been paid back).

On February 10, 2010, without Plaintiffs' knowledge or consent, Deshler withdrew $1,319,126.79 of Plaintiffs' assets from the Blue Mountain Trust from the Sprague Branch of Wells Fargo Bank, located inside a Safeway supermarket in Spokane Valley, Washington. *Id.* ¶ 21. Deshler did so by filling out eight request forms and ordering fourteen cashier's checks, all payable to "CARTER DESHLER TRUSTEE." Details of the cashier's checks at issue are:

- Cashier's Check No. 0185203171 in the amount of $50,000.00;

- Cashier's Check No. 0185203172 in the amount of $50,000.00;

- Cashier's Check No. 0185203173 in the amount of $50,000.00;

- Cashier's Check No. 0185203174 in the amount of $50,000.00;

- Cashier's Check No. 0185203175 in the amount of $50,000.00;

- Cashier's Check No. 0185203176 in the amount of $11,000.00;

- Cashier's Check No. 0185203177 in the amount of $11,004.81;

- Cashier's Check No. 0185203178 in the amount of $11,000.00;

- Cashier's Check No. 0185203179 in the amount of $71,796.45;

- Cashier's Check No. 0185203180 in the amount of $12,083.27;

- Cashier's Check No. 0185203181 in the amount of $18,124.90;

- Cashier's Check No. 0185203182 in the amount of $30,208.17;

- Cashier's Check No. 0185201195 in the amount of $427,902.31;

- Cashier's Check No. 0185201196 in the amount of $427,902.31;

*Id.* Plaintiffs claim to have copies of these cashier's checks. *Id.*

Plaintiffs allege that Jane Folden, then the manager of the Wells Fargo Sprague Branch, helped Deshler withdraw the money from the Blue Mountain Trust. *Id.* ¶ 22. Plaintiffs allege that Folden was familiar with Deshler and negligently allowed Deshler to withdraw the money from the Blue Mountain Trust despite Kay's repeated instructions to Deshler and Folden that all of the money in the Blue Mountain Trust was to stay in the Blue Mountain Trust. *Id.* ¶¶ 24-25.

Plaintiffs allege that beginning in November 2010, Deshler used the money from the Blue Mountain Trust as collateral for third-party loans and to buy real estate. *Id.* ¶ 27. Specifically, on November 30, 2010, Deshler deposited $1,281,055.96 into a Wells Fargo account entitled "Crystal Gallery Operating Account." *Id.* ¶ 28. Between December 6, 2010 and December 31, 2010, Deshler transferred $776,766.65 from the Crystal Gallery Operating Account to the "Paul Revere Financial Group Trust." *Id.* ¶ 29. In December 2010, Deshler named Harris as trustee to the Paul Revere Financial Group Trust. *Id.* ¶ 30. On February 27, 2011, Deshler established the "Home

4

Sanctuary Trust" and named Harris and Humphrey as trustees. *Id.* ¶ 31. The Home Sanctuary Trust later made an unsecured loan to Christopher and Carlee Barnes, of Long Beach, California. *Id.* In June 2011, Deshler established the "Buckeye Property Trust" and used it to buy property located at 1530 West Buckeye in Spokane, Washington. *Id.* ¶ 32. Deshler named Harris and Humphrey as trustees of the Buckeye Property Trust. *Id.* On August 24, 2011, Deshler established the "Chelen Trust" and used it to buy property located at 1823 W. Chelan Avenue in Spokane, Washington. *Id.* ¶ 33. Harris and Humphrey were once again named as trustees. *Id.* Finally, in August 2011, Deshler established the "Perry Street Trust" and named Harris and Humphrey as trustees. *Id.* ¶ 34.

**3. Plaintiffs Learn of Unauthorized Withdrawals, Attempt to Recover Money**

Plaintiffs allege that they first learned of Deshler's unauthorized withdrawal of their savings from the Blue Mountain Trust in June 2012. Specifically, on June 12, 2012, Deshler wrote to Plaintiffs to inform them that Deshler and Harris would be in the San Jose area for seminars and meetings on June 22 and 23, 2012. *Id.* ¶ 35. On June 22, 2012, Deshler and Harris met with Plaintiffs at Plaintiffs' home in Campbell, California. *Id.* ¶ 36. During this meeting, Deshler and Harris admitted to Plaintiffs that Deshler had taken the money from the Blue Mountain Trust and reinvested it in properties owned by the Paul Revere Financial Trust. *Id.* Deshler and Harris showed Plaintiffs a brochure titled "Paul Revere Investments June 2012" that included pictures of a hotel and houses. *Id.* Plaintiffs allege that seeing this brochure was the first that they had learned of the investments made with their savings. They allege that the withdrawal from the Blue Mountain Trust was done without permission, a contract, a trustee meeting, or a "minute order." *Id.*

According to Plaintiffs, Deshler represented to Plaintiffs during this June 22, 2012 meeting that Plaintiffs would receive $6,500 each month from "Paul Revere Investments," but Plaintiffs claim that they never received any monthly payment. *Id.* When Plaintiffs questioned Deshler about the details of the property purchases, addresses, and related trusts, Deshler responded,

United States District Court
Northern District of California

"None of your business, the trusts are secure." *Id.* Plaintiffs demanded that their money be immediately returned to the Blue Mountain Trust, but Deshler and Harris told Plaintiffs that their money would be returned with interest in thirty years. *Id.* ¶ 38. On June 23, 2012, John attended the seminar Deshler was giving and pulled Deshler aside to demand that she return the money to the Blue Mountain Trust. *Id.* ¶ 39. Deshler replied that she could return it in five years. *Id.*

In July and August 2012, John spent three weeks in Spokane, Washington, investigating Deshler's actions. *Id.* ¶ 40. With the help of a title researcher and property tracer, John located the properties identified in the Paul Revere Investments brochure and placed liens on those properties. *Id.* John also had three or four meetings with Deshler and Harris in Spokane about "the problems with the trust," but Deshler and Harris refused to cooperate. *Id.* ¶¶ 40, 42. In addition, John met with Patrick Devine, who was then manager of Wells Fargo's Sprague Branch. *Id.* ¶ 42. Devine allegedly commented about Deshler, "[T]here is something about her I don't trust. She's in here every day taking money in and out." *Id.* During a meeting that Devine arranged with Deshler and Harris, Deshler allegedly admitted taking the money from the Blue Mountain Trust without Plaintiffs' permission and commented, "You will have to put me in federal prison." *Id.* Devine initially helped John trace the money that Deshler withdrew from the Blue Mountain Trust and provided John "with some of the original legal paperwork," but after several weeks Devine said that he could no longer help. *Id.* ¶ 43.

Deshler allegedly threatened Plaintiffs during John's investigation in Spokane. Deshler called John and warned him that if he did not stop his investigation in Spokane, she would not be able to return any of Plaintiffs' money. *Id.* ¶ 44. Deshler also threatened "her own actions" if Plaintiffs persisted in asking questions about where their money had gone. Plaintiffs claim to have a recording of this voicemail. *Id.*

On August 2, 2012, Deshler wrote a letter to Plaintiffs noting that she had returned $200,000 and that she could only pay back $20,000 more at that time. *Id.* ¶ 45. She apparently proposed a payment plan of $4,000 per month to return that $20,000. *Id.*

United States District Court
Northern District of California

Deshler died on September 30, 2012 and was cremated two days after her death. *Id.* ¶ 46. Plaintiffs learned of Deshler's death when they received a letter from Harris, dated October 24, 2012, that informed them of Deshler's death.[1] *Id.* Plaintiffs then hired a private investigator to investigate which properties had been purchased with their money and the status of the various Deeds of Trust. *Id.* ¶ 47.

Plaintiffs allege that Deshler, Lord & Carter Trust and Trustee Services, Harris, and Humphrey continue to perpetrate fraud on Plaintiffs by refusing to return Plaintiffs' assets that were taken from the Blue Mountain Trust, concealing and misrepresenting information related to the properties purchased with the Blue Mountain Trust funds, and continuing to collect rental income from the properties purchased with the Blue Mountain Trust funds. *Id.* ¶ 48.

Plaintiffs allege that they tried to obtain information to resolve their claims by contacting Wells Fargo headquarters in San Francisco, California in September and October 2015. *Id.* ¶ 49. Wells Fargo has allegedly threatened to close Plaintiffs' accounts if they continue to raise this issue with Wells Fargo. *Id.*

**4. Lawsuit in State Court**

On February 3, 2016, Plaintiffs, represented by an attorney, filed a complaint against Lord & Carter,[2] Harris in her individual capacity and as trustee of the trusts identified above, and Humphrey in Santa Clara County Superior Court alleging elder abuse, fraud, constructive fraud, breach of fiduciary duty, accounting, unjust enrichment, negligent misrepresentation, breach of contract, conversion, and imposition of constructive trust.[3] ECF No. 13, Request for Judicial

---

[1] Although Plaintiffs were initially suspicious that the notice of Deshler's death may have been fraudulent, they represented to the Court during the June 21, 2017 case management conference that they were satisfied that Deshler had in fact died. *See* ECF No. 43 at 3:22-4:12.
[2] The name of the entity sued in the state court complaint is simply "Lord & Carter." ECF No. 13 Exh. 2 at 1.
[3] In support of their motion to dismiss, Harris and Humphrey request judicial notice of the following court records in *Gabor v. Harris*, Santa Clara County Superior Court No. 1-16-CV-291117: (1) Notice of Entry of Judgment, attaching May 3, 2016 Order Granting Defendants' Motion to Quash Service of Summons (Exhibit 1); (2) the State Court Complaint (Exhibit 2); (3) Defendants' Memorandum in Support of Motion to Quash (Exhibit 3); (4) Plaintiffs' Opposition

7

Notice ("RJN"), Exh. 2.  The state court complaint was based on substantially the same events as the instant Complaint, although the facts that Plaintiffs pled in support of the two complaints vary somewhat.

On April 5, 2016, Harris and Humphrey moved to quash service of the summons for the State Court Complaint for lack of personal jurisdiction.  RJN Exh. 3.  On April 20, 2016, Plaintiffs opposed the motion to quash.  RJN Exh. 4.  On April 26, 2016, Harris and Humphrey filed a reply in support of their motion to quash.  RJN Exh. 5.  On May 3, Superior Court Judge Theodore Zayner granted the motion to quash.  RJN Exh. 1 at 5.  The state court dismissed the complaint without leave to amend.  *Id.*  It is not clear from the judicially noticed documents whether the state court complaint was dismissed as to "Lord & Carter," which was named as a separate defendant and which did not join Harris and Humphrey's motion to quash.  Plaintiffs appealed the dismissal of their complaint, and that appeal is currently pending.  *See* ECF No. 12 at 3; *Case Information: 16CV291117 | Kay Gabor et al vs Rebecca Harris et al*, SANTA CLARA COUNTY SUPERIOR COURT

---

to Motion to Quash (Exhibit 4); and (5) Defendants' Reply in Support of Motion to Quash (Exhibit 5).  *See* ECF No. 13.  Harris and Humphrey also request judicial notice of an order entered in an unrelated case that Plaintiffs brought, *Gabor v. County of Santa Clara Board of Supervisors*, No. C-07-4266, in which U.S. District Judge Ronald Whyte of the Northern District of California found Plaintiffs to be vexatious litigants and enjoined them from filing further civil rights actions without leave of the court.  ECF No. 13, Exh. 6, at 9-13.

The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Public records, including judgments and other publicly filed documents, are proper subjects of judicial notice.  *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) ("[Courts] may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").  However, to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court will not take judicial notice of those facts.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  Plaintiffs do not object to Harris and Humphrey's request for judicial notice.  Because the state court records are the proper subjects of judicial notice and are relevant to Harris and Humphrey's motion to dismiss, the Court GRANTS Harris and Humphrey's request for judicial notice of the five filings in *Gabor v. Harris*.  For the same reasons, the Court takes judicial notice of the trial court's and appeals court's dockets in *Gabor v. Harris*.  *See also Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (judicial notice of websites run by governmental agencies is appropriate).  However, because the order in *Gabor v. County of Santa Clara* is not relevant to the instant case, the Court will not consider it.

Case No. 17-CV-01524-LHK
ORDER GRANTING WELLS FARGO'S MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING HARRIS AND HUMPHREY'S MOTION TO DISMISS

– CASE INFORMATION PORTAL, *available at* https://cmportal.scscourt.org/Portal (accessed Sept. 6, 2017).

**B.    Procedural History of the Instant Case**

Plaintiffs filed the instant Complaint in this Court on March 21, 2017. ECF No. 1. Summonses were returned executed as to Harris, Humphrey, and Lord & Carter Trust and Trustee Services on April 17, 2017. ECF No. 6. On that same day, the summons was returned unexecuted as to Deshler; the process server noted on the proof of service form that Deshler was deceased. ECF No. 7. Wells Fargo filed a motion to dismiss on April 19, 2017, ECF No. 9, as did Harris and Humphrey, ECF No. 12. The Court describes these motions in turn below. The Court then describes proceedings related to Deshler's and Lord & Carter Trust and Trustee Service's failure to appear.

**1.    Wells Fargo's Motion to Dismiss**

Wells Fargo makes three arguments in support of its motion to dismiss for failure to state a claim. First, its primary argument is that Plaintiffs' negligence claim—the only cause of action alleged against Wells Fargo—was barred by any possibly applicable statute of limitations. ECF No. 9 at 1, 4. Second, Wells Fargo argues that it did not owe Plaintiffs a duty of care because Wells Fargo's customer was the Trust—not Plaintiffs. *Id.* at 4-6. Relatedly, Wells Fargo argued that banks have no duty to police fiduciary accounts. *Id.* at 5. Third, Wells Fargo argues that Plaintiffs' allegation that Wells Fargo violated the Uniform Fiduciaries Act ("UFA")—an allegation imbedded within Plaintiffs' negligence claim—fails. *Id.* at 6. Namely, California has not adopted the UFA and so the UFA does not apply to a negligence claim brought under California law. *Id.* at 6-7.

On May 3, 2017, Plaintiffs filed an opposition. ECF No. 23. Construed liberally, Plaintiffs' opposition raises an equitable tolling argument by detailing Plaintiffs' efforts to pursue their claim by sending letters to various federal and state agencies, directly engaging Wells Fargo,

9

and retaining counsel.[4]  ECF No. 23 at 2.

On May 10, 2017, Wells Fargo filed a reply in support of its motion to dismiss.  ECF No. 26.  Wells Fargo argued that Plaintiffs cited no authority for the principle that unsuccessful efforts to retain counsel or unsuccessful efforts to resolve a complaint directly with the defendant toll the statute of limitations.  *Id.* at 2.  Wells Fargo also urged the Court to deem Plaintiffs to have conceded Wells Fargo's duty of care and UFA arguments by failing to respond to them.  *Id.* at 2-3.

### 2. Harris and Humphrey's Motion to Dismiss

Harris and Humphrey argued in their motion to dismiss that this Court lacks personal jurisdiction over them.  Specifically, they argue that Plaintiffs' state court complaint contains materially identical allegations against Harris and Humphrey.  As a result, they contend that the state court's finding that it lacked personal jurisdiction over Harris and Humphrey collaterally estops this Court from exercising personal jurisdiction over them.  ECF No. 12 at 1-3.

On May 3, 2017, Plaintiffs filed an opposition.  ECF No. 20.  Plaintiffs did not directly respond to Harris and Humphrey's collateral estoppel argument.  Instead, they reiterated their key jurisdictional allegations, including Harris's June 22, 2012 visit to Plaintiffs' home in California and the fact that Harris and Humphrey continue to receive money from the properties purchased with the Blue Mountain Trust funds.  *Id.* at 2.

On May 9, 2017, Harris and Humphrey filed a reply.  ECF No. 25.  For the first time in the reply, Harris and Humphrey then went on to argue that the Complaint should also be dismissed as to Deshler and Lord & Carter Trust and Trustee Services.  The Court describes these arguments in more detail in Section III.B.2-3 below.

### 3. Deshler's and Lord & Carter Trust and Trustee Service's Failure to Appear

On May 1, 2017, the Court set a status conference for May 16, 2017 to discuss the non-

---

[4] The Court must construe Plaintiffs' *pro se* pleadings and motions liberally.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (affirming courts' continued obligation to construe *pro se* pleadings liberally despite the heightened pleading standards announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

10

United States District Court
Northern District of California

appearance of Deshler and Lord & Carter Trust and Trustee Service. ECF No. 18. In response to the setting of the status conference, Harris and Humphrey's attorneys investigated the facts surrounding the service of process on Deshler and Lord & Carter Trust and Trustee Services. *See* ECF No. 19; ECF No. 25 at 3. On May 16, 2017, Magistrate Judge van Keulen held a status conference on Deshler's and Lord & Carter Trust and Trustee Service's failure to appear. ECF No. 29. At that status conference, Harris and Humphrey's attorney David Fisher explained that Deshler died on September 30, 2012. *See* Audio Recording of Status Conference at 9:37 a.m. Plaintiff John Gabor acknowledged receipt of Deshler's death certificate. *Id.* at 9:48 a.m. Fisher also explained that there is no such entity as Lord & Carter Trust and Trustee Services and that a separate entity, Lord & Carter Trust, existed but ceased operation when Deshler died. *Id.* at 9:38-9:39 a.m. In response, John stated that Deshler used many names. *Id.* at 9:43 a.m. John then produced a letter from Deshler that was written on letterhead using the name "Lord & Carter Trust and Trustee Services." *Id.* at 9:43-9:44 a.m. Kay added that Deshler's business card also used the name "Lord & Carter Trust and Trustee Services." *Id.* at 9:44 a.m. John also stated that Deshler sometimes used the name "Lord & Carter Professional Trust Services." *Id.* at 9:47 a.m.

Because Deshler and Lord & Carter Trust and Trustee Services had not appeared and thus had not consented to magistrate judge jurisdiction, the case was transferred to the undersigned judge on May 17, 2017. *Id.* at 9:49 a.m; ECF Nos. 29, 31. In their case management statement filed on June 9, 2017, Plaintiffs stated that they may "amend the Complaint by September 21, 2017 to add the Trust as a party." ECF No. 34 at 3. Presumably "the Trust" referred to Lord & Carter Trust. On June 21, 2017, the Court set November 1, 2017 as the last day to amend the pleadings or add parties. ECF No. 40 at 2.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2)

Where a defendant moves to dismiss a suit for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that

11

jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand a motion to dismiss for lack of personal jurisdiction. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir.2010)). At this stage of the proceeding, "uncontroverted allegations in plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in plaintiff's favor." *Brayton Purcell*, 606 F.3d at 1127 (internal quotation marks, citations, and alterations omitted).

**B.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish

12

ORDER GRANTING WELLS FARGO'S MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING HARRIS AND HUMPHREY'S MOTION TO DISMISS

that he cannot prevail on his . . . claim." *Weisbuch v. Cty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

## C.     Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted). Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). With regard to *pro se* plaintiffs, the Ninth Circuit has instructed that "[d]ismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988)).

## III.     DISCUSSION

## A.     Wells Fargo's Motion to Dismiss

Wells Fargo made three arguments in support of its motion to dismiss. First, Wells Fargo argued that Plaintiffs' negligence claim is barred by any possibly applicable statute of limitations. Second, Wells Fargo argued that it did not owe Plaintiffs a duty of care because Wells Fargo's customer was Blue Mountain Trust, not Plaintiffs. Wells Fargo also did not owe Plaintiffs a duty of care because banks have no duty to police fiduciary accounts. Third, Wells Fargo argued that the UFA does not apply to negligence claims brought under California law because California did not adopt the UFA. Because the Court concludes that Plaintiffs' negligence claim is barred by any applicable statute of limitations, it need not reach Wells Fargo's duty of care or UFA arguments.

### 1.     Statute of Limitations

Wells Fargo contends that Plaintiffs' negligence claim is foreclosed by any possibly

United States District Court
Northern District of California

applicable statute of limitations. The Court first addresses whether Plaintiffs' Complaint was timely and concludes that it was not. The Court then addresses whether Plaintiffs have adequately pled equitable tolling or equitable estoppel.

Wells Fargo identifies four conceivably applicable statutes of limitations, the longest of which is three years. *See* ECF No. 9 at 4 (identifying Cal. Code Civ. P. § 339(1) (two years for negligence action not based on a written contract); Cal. Code Civ. P. § 340 (one year for action by a depositor against a bank for the payment of a forged or raised check); Cal. Com. Code § 4111 (three years for enforcing obligations and duties arising out of Commercial Code section governing bank deposits and collections); and Cal. Com. Code § 3118 (three years for action for conversion of a check or for money had and received)). California case law similarly suggests that the limitations period applicable to Plaintiffs' negligence claim against Wells Fargo would be three years at most. *See Sun 'n Sand, Inc. v. United Cal. Bank*, 582 P.2d 920 (Cal. 1978) (applying three-year statute of limitations from Cal. Code Civ. P. § 338 to negligence action against bank based on fraudulent check-cashing scheme); *Thomson v. Canyon*, 129 Cal. Rptr. 3d 525, 534 (Ct. App. 2011) (holding that Cal. Code Civ. P. § 339(1)'s two-year limitations period, rather than the four-year period under California's residual statute of limitations in § 343, applied to professional negligence action); *Reliance Ins. Co. v. Wells Fargo Bank, N.A.*, No. B181301, 2005 WL 3140174, at *4 (Cal. Ct. App. Nov. 28, 2005) (unpublished) (stating that Cal. Code. Civ. P. § 348, which provides no limitations period for actions to recover money deposited with a bank, "was intended to permit an action against a bank which wrongfully refuses to give a depositor back the money deposited. It does not apply to a situation, as here, where money was improperly paid out to a third party.").

It is not clear which statute of limitations applies to Plaintiffs' negligence claim because Plaintiffs' theory of liability is not clear.[5] The Court need not resolve which statute of limitations

---

[5] The Complaint suggests Wells Fargo breached a duty to Plaintiffs by allowing Deshler to withdraw the Blue Mountain Trust funds despite Kay's express instruction to Wells Fargo that the

14

ORDER GRANTING WELLS FARGO'S MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING HARRIS AND HUMPHREY'S MOTION TO DISMISS

applies, however, because Plaintiffs' negligence claim was untimely under any applicable statute of limitations. Plaintiffs admit that Deshler withdrew the money from the Blue Mountain Trust without their consent on February 10, 2010. Compl. ¶ 21. On June 22, 2012, Plaintiffs learned of Deshler's unauthorized withdrawal. *Id.* ¶ 36. On March 21, 2017, Plaintiffs filed the instant lawsuit. Thus, Plaintiffs filed the instant lawsuit more than seven years after Deshler withdrew the money and about four years and eight months after Plaintiffs learned about Deshler's withdrawal. Because the longest potentially applicable statute of limitations is three years, Plaintiffs' negligence claim against Wells Fargo is time-barred unless the statute of limitations was equitably tolled or unless Wells Fargo is equitably estopped from asserting the statute of limitations as a defense.

### a. Equitable Tolling

"Equitable tolling is a judge-made doctrine 'which operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." *Lantzy v. Centex Homes*, 73 P.3d 517, 523 (Cal. 2003) (quoting *Addison v. California*, 578 P.2d 941 (Cal. 1978)). The California Supreme Court "has applied equitable tolling in carefully considered situations to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice." *Id.* Specifically, California courts apply equitable tolling "[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 194

---

Blue Mountain Trust funds were to remain in the Blue Mountain Trust. Compl. ¶ 24. Plaintiffs also allege that Deshler withdrew the Blue Mountain Trust funds without proper authorization from Plaintiffs, *id.* ¶ 23, but Plaintiffs do not explain whether Wells Fargo would have had reason to know the withdrawals were unauthorized. For example, Plaintiffs do not allege that the Blue Mountain Trust required more than one trustee's signature to withdraw funds. *See Simi Mgmt. Corp. v. Bank of America, N.A.*, 930 F. Supp. 2d 1082, 1094 (N.D. Cal. 2013) (discussing how California statutes governing unauthorized signatures govern a check lacking one of two required signatures). Finally, Plaintiffs allege that Wells Fargo allowed Deshler's withdrawals without notifying Plaintiffs and that Wells Fargo knew or should have known that Deshler was laundering the funds. *Id.* ¶¶ 25, 74. Which statute of limitations applies depends on which theory of liability Plaintiffs assert.

15

P.3d 1026, 1031 (Cal. 2008) (quoting *Elkins v. Derby*, 525 P.2d 81, 84 (Cal. 1974)). For example, "[equitable tolling] may apply where one action stands to lessen the harm that is the subject of a potential second action; where administrative remedies must be exhausted before a second action can proceed; or where a first action, embarked upon in good faith, is found to be defective for some reason." *Id.* To successfully invoke equitable tolling under California law, a plaintiff must show "[1] timely notice, [2] lack of prejudice to the defendant, and [3] reasonable and good faith conduct on the part of the plaintiff." *Madani v. Cty. of Santa Clara*, No. 16-CV-07026, 2017 WL 2954643, at *6 (N.D. Cal. July 11, 2017) (quoting *McDonald*, 194 P.3d at 1033). Plaintiffs bear the burden of proving the applicability of equitable tolling. *In re Marriage of Zimmerman*, 109 Cal. Rptr. 3d 96, 105 (Ct. App. 2010).

In the instant case, Plaintiffs' opposition raises the possibility that equitable tolling may be appropriate. Specifically, Plaintiffs raise three possible grounds for equitable tolling: (1) their efforts to seek help from various federal and state government entities, (2) their direct contact with Wells Fargo, and (3) their retaining several attorneys, none of whom filed a complaint in either state or federal court. ECF No. 23 at 2. The Court addresses each possible basis for equitable tolling in turn.

First, equitable tolling may apply to the voluntary pursuit of alternate remedies, potentially including state or federal administrative complaint proceedings. *See McDonald*, 194 P.3d at 1032-33. In the instant case, Plaintiffs' opposition makes two statements related to state or federal government complaints. First, "From 2013 to today Gabor's made many attempts to Wells Fargo Bank. The Controller of currency, Banks in Seattle, incl. Washington State Financial Institutions, Division of Banks, Many letters to Wells Fargo Bank only produced Threat to cancel savings account." ECF No. 23 at 2. Second, "From beginning 2012 Washington State has refused to take any case or assist Gabor's and Blue Mountain Trust, as being non- residents." *Id.* Judicially noticeable information suggests that the U.S. Treasury Department's Office of the Comptroller of the Currency, the Washington State Department of Financial Institutions-Division of Banks, and

16

ORDER GRANTING WELLS FARGO'S MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING HARRIS AND HUMPHREY'S MOTION TO DISMISS

the Washington State Attorney General's Office offer ways for consumers to lodge complaints.[6]

*See File a Complaint*, OFFICE OF THE COMPTROLLER OF THE CURRENCY,

https://www.helpwithmybank.gov/complaints/index-file-a-bank-complaint.html (accessed Sept.

11, 2017); *File a Complaint*, WASHINGTON STATE DEPARTMENT OF FINANCIAL INSTITUTIONS,

http://www.dfi.wa.gov/file-complaint (accessed Sept. 11, 2017); *File a Complaint*, WASHINGTON

STATE OFFICE OF THE ATTORNEY GENERAL, http://www.atg.wa.gov/file-complaint (accessed Sept.

11, 2017). Even construing Plaintiffs' statements as alleging that Plaintiffs filed formal

complaints with each of these government agencies, however, Plaintiffs have not carried their

burden to show that any equitable tolling that may result from these complaints saves their

negligence claim. Specifically, without knowing when Plaintiffs filed their administrative

complaints, if any, or when the relevant government agencies responded, if at all, the Court has no

way of knowing how much time was potentially tolled.

       Second, Plaintiffs contend that they were in direct contact with Wells Fargo beginning in

either 2012 or 2013 in an attempt to resolve the issues with the Blue Mountain Trust. *See* ECF

No. 23 at 2; Compl. at ¶ 42. Although Plaintiffs do not cite any authority for the principle that

direct customer complaints to the defendant could toll the statute of limitations, the California

Court of Appeal appears to have contemplated that such a complaint could toll the statutes of

limitations contained in California Code of Civil Procedure § 340(c) or California Commercial

Code § 4111. *See Roy Supply, Inc. v. Wells Fargo Bank*, 46 Cal. Rptr. 2d 309, 323 n.25 (Ct. App.

1995) ("But the statute of limitations may be tolled and it would not be extraordinary to find the

statute tolled through the express or implied conduct of a bank after notice of a forgery and while

the claim was evaluated and/or negotiated, or in some other manner."); *see also Cespedes v.*

---

[6] "[T]he court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (internal quotation marks and alterations omitted). Accordingly, the websites of the Office of the Comptroller of the Currency, the Washington State Department of Financial Institutions, and the Washington State Attorney General's Office are the appropriate subjects of judicial notice.

17

*Metro. Life Ins. Co.*, No. B234461, 2012 WL 5987445, at *3 (Cal. Ct. App. Nov. 29, 2012) (assuming without deciding that company's investigation following complaint tolled statute of limitations). Even assuming that whatever statute of limitations applied to Plaintiffs' claim could be tolled by a direct customer complaint, Plaintiffs' attempt to establish equitable tolling based on their contact with Wells Fargo fails for lack of detailed factual allegations. Beyond several in-person meetings with the Wells Fargo Sprague Branch manager in 2012 and unspecified letters, it is unclear what contact Plaintiffs had with Wells Fargo, when such contact occurred, or what the substance of Wells Fargo's responses were. Thus, as with Plaintiffs' contact with the government agencies, the Court is unable to tell whether the contact merits equitable tolling, nor can the Court discern how much time was potentially tolled by Plaintiffs' contacts with Wells Fargo.

Third, Plaintiffs argue that they retained several attorneys but that these attorneys never filed a complaint on their behalf. An attorney in Burlingame considered Plaintiffs' case for six months before declining to take it. ECF No. 23 at 2. An attorney in Hayward then took the case, charged Plaintiffs $5,900, and never returned Plaintiffs' calls or filed a complaint before the three-year statute of limitations ran. *Id.* Plaintiffs filed a complaint with the California Bar Association against this Hayward attorney. Finally, in 2016, Plaintiffs retained a Spokane, Washington-based attorney, who charged Plaintiffs $40,000 but never filed a complaint. *Id.*

As an initial matter, the California Court of Appeal has held on multiple occasions that attorney negligence or reliance on unsound legal advice does not equitably toll the statute of limitations. *See McEnroe v. AT&T Mobility Services LLC*, No. A136272, 2015 WL 871249, at *4 (Cal. Ct. App. Feb. 27, 2015) (unpublished); *Wood v. Cty. of Santa Clara*, No. H030087, 2007 WL 1301003, at *6-7 (Cal. Ct. App. May 4, 2007) (unpublished); *Bonifield v. Cty. of Nev.*, 114 Cal. Rptr. 2d 207, 213 (Ct. App. 2001); *see also Harrison v. Comcast*, No. C-04-4880, 2006 WL 2734322, at *7 (N.D. Cal. Sept. 25, 2006) (applying *Bonifield*). Moreover, Plaintiffs do not identify these attorneys by name, nor do they specify the time periods during which they were retained or the scope of the representations. As a result, even if attorney negligence could

18

equitably toll the statute of limitations—which it appears as a matter of California law it cannot—the Court would still be unable to conclude from the factual allegations in the opposition whether the attorneys were actually negligent or how much time, if any, was tolled.

Accordingly, the Court concludes that Plaintiffs have not carried their burden to establish that equitable tolling applies to save their untimely negligence claim.

### b. Equitable Estoppel

"Equitable tolling and equitable estoppel are distinct doctrines." *Lantzy*, 73 P.3d at 532. Equitable estoppel "addresses . . . the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period." *Id.* (internal quotation marks omitted). Plaintiffs have put forth no facts suggesting that equitable estoppel applies in this case.

Accordingly, the Court concludes that Plaintiffs' negligence claim as to Wells Fargo should be dismissed as untimely. As the Court noted above, "[d]ismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Nordstrom*, 762 F.3d at 908 (quoting *Schucker*, 846 F.2d at 1203-04). Because it is conceivable that Plaintiffs could amend the Complaint to adequately plead equitable tolling or equitable estoppel, Plaintiffs' negligence claim will be dismissed with leave to amend.

## B. Harris and Humphrey's Motion to Dismiss

Harris and Humphrey argue that the Complaint should be dismissed as to them because this Court lacks personal jurisdiction over them. Specifically, Harris and Humphrey argue that this Court is collaterally estopped from finding that it has personal jurisdiction over them by the Santa Clara County Superior Court's dismissal of a materially identical complaint based on lack of personal jurisdiction. ECF No. 12 at 1. Harris and Humphrey argue in their reply that the Court should also dismiss the Complaint as to Deshler because she is deceased and as to Lord & Carter

19

Trust and Trustee Services because no such entity exists. The Court addresses these arguments in turn.

### 1. Collateral Estoppel as to Personal Jurisdiction Over Harris and Humphrey

Pursuant to the Full Faith and Credit statute, federal courts must look to state law to determine the preclusive effect of an earlier state judgment. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 914-15 (9th Cir. 1993) (analyzing 28 U.S.C. § 1738). Under California law, collateral estoppel, also referred to as issue preclusion, "'precludes relitigation of issues argued and decided in prior proceedings,' when six criteria are met." *White v. City of Pasadena*, 671 F.3d 918, 927 (9th Cir. 2012) (quoting *Lucido v. Superior Court*, 795 P.2d 1223, 1225 (Cal. 1990)).

> These criteria are: (1) "the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding"; (2) the issue to be precluded "must have been actually litigated in the former proceeding"; (3) the issue to be precluded "must have been necessarily decided in the former proceeding"; (4) "the decision in the former proceeding must be final and on the merits"; (5) "the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding"; and (6) application of issue preclusion must be consistent with the public policies of "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation."

*Id.* (quoting *Lucido*, 795 P.2d at 1225-27).

The dispositive factor in the instant case is whether the decision in the former proceeding is final. "[A]ccording to California law, a judgment is not final for purposes of collateral estoppel while open to direct attack, e.g., by appeal." *Abelson v. Nat'l Union Fire Ins. Co.*, 35 Cal. Rptr. 2d 13, 20 (Ct. App. 1994); *see also City of Riverside v. Valley Outdoor, Inc.*, No. E036258, 2005 WL 2233617, at *6 (Sept. 13, 2005) (unpublished) (same); *Lumpkin v. Jordan*, 57 Cal. Rptr. 2d 303, n.5 (Ct. App. 1996) (same); *Nat'l Union Fire Ins. Co. v. Stites Prof. Law Corp.*, 1 Cal. Rptr. 2d 570, 574 (Ct. App. 1991) (same); *Long Beach Unified Sch. Dist. v. California*, 275 Cal. Rptr. 449, 458 (Ct. App. 1990) (same). This principle appears to be grounded in part on California Code of Civil Procedure § 1049, which states that "[a]n action is deemed to be pending from the

20

time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied." On May 23, 2016, Plaintiffs filed a notice of appeal in the state court case. *See Case Information: 16CV291117 | Kay Gabor et al vs Rebecca Harris et al*, SANTA CLARA COUNTY SUPERIOR COURT – CASE INFORMATION PORTAL, https://cmportal.scscourt.org/Portal (accessed Sept. 12, 2017). The notice of appeal was lodged with the California Court of Appeal, 6th Appellate District on July 26, 2016. *See Docket for Case No. H043784, Gabor et al. v. Harris et al.*, APPELLATE COURTS CASE INFORMATION, 6TH APPELLATE DISTRICT, http://appellatecases.courtinfo.ca.gov/search.cfm?dist=6 (accessed Sept. 12, 2017). Harris and Humphrey acknowledged in their motion that the state court judgment has been appealed, ECF No. 12 at 3, and at the time of writing of this Order, the appeal was still pending. *Id.* As a result, under California law the state court judgment is not final for the purposes of collateral estoppel, and so collateral estoppel does not apply.

Contrary to the California Court of Appeal's repeated statements that a judgment subject to appeal is not final, Harris and Humphrey argue that "a pending appeal will <u>not</u> preclude the application of collateral estoppel." ECF No. 12 at 3. For this proposition they rely only on footnote 2 of *Sandoval v. Superior Court*, 190 Cal. Rptr. 29 (Ct. App. 1983), but their reliance is misplaced. In fact, the plain language of *Sandoval* contradicts their assertion. The California Court of Appeal in *Sandoval* wrote:

> **Although California law is settled that *pending* appeal a trial court judgment is not final and will not be given res judicata effect** (Code Civ. Proc., § 1049), once the appeal is settled favorably to the plaintiff and thereafter dismissed, the Restatement analysis and reason itself dictate that the trial court judgment reemerges with sufficient finality to permit the application of collateral estoppel.

*Id.* at 32 (bold added). Footnote 2 then contrasts this California rule of finality with the federal rule and that of a majority of states, which treat a judgment as final until it has been reversed, vacated, or modified. *See id.* n.2. Clearly, because California law governs the Court's analysis here, the footnote about the rule in other jurisdictions provides Harris and Humphrey no relief. Moreover, *Sandoval*'s enunciation of the collateral estoppel effect of a case that was settled

United States District Court
Northern District of California

1 pending appeal, *see id.* at 32-35, has no applicability to the instant case, where there is no

2 allegation that the parties settled the state court case.

3      Harris and Humphrey's motion to dismiss wholly relies on the collateral estoppel effect of

4 the state court judgment. Because an appeal of the state court judgment is pending, that judgment

5 is not final for the purposes of collateral estoppel under California law. Accordingly, Harris and

6 Humphrey's motion to dismiss is DENIED.

7      **2. Deshler**

8      Harris and Humphrey argued for the first time in their reply in support of the motion to

9 dismiss that the Complaint should be dismissed as to Deshler because Deshler died in 2012 and

10 therefore was never served with process in this suit. ECF No. 25 at 3. Harris and Humphrey also

11 argue that Plaintiffs' Complaint is untimely as to Deshler because California's statute of

12 limitations governing actions against deceased persons, Cal. Code Civ. P. § 366.2(a), provides a

13 one-year limitations period commencing on the date of death. *Id.* & n.1. As an initial matter, the

14 Court "need not consider arguments raised for the first time in reply brief." *Zamani v. Carnes*,

15 491 F.3d 990, 997 (9th Cir. 2007). Nor is it clear that Harris and Humphrey can properly move to

16 dismiss the case as to Deshler, as neither of them have appeared in any sort of representative

17 capacity on Deshler's behalf. As a result, the Court concludes that no motion to dismiss the

18 Complaint as to Deshler is properly before it.

19      Nevertheless, Plaintiffs have on several occasions stated that they named Deshler as a

20 defendant in an attempt to recover any assets remaining in her estate. *See* ECF No. 43 at 4:14-

21 4:19; Audio Recording of May 16, 2017 Status Conference. Plaintiffs have not tried to substitute

22 Deshler's successor or personal representative as a party under Federal Rule of Civil Procedure

23 25(a),[7] nor would such an attempt be successful, because Rule 25(a) does not apply where the

24

---

25 [7] Rule 25(a)(1) provides: "If a party dies and the claim is not extinguished, the court may order
substitution of the proper party. A motion for substitution may be made by any party or by the

26 decedent's successor or representative. If the motion is not made within 90 days after service of a
statement noting the death, the action by or against the decedent must be dismissed."

27

Case No. 17-CV-01524-LHK

28 ORDER GRANTING WELLS FARGO'S MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING
HARRIS AND HUMPHREY'S MOTION TO DISMISS

defendant died before the action was filed.  *See Mizukami v. Buras*, 419 F.2d 1319, 1320 (5th Cir. 1969); *Lacy v. Tyson*, 2012 WL 4343837, at *2 (E.D. Cal. Sept. 20, 2012); *Hammond v. Federal Bureau of Prisons*, 740 F. Supp. 2d 105, 109-10 (D.D.C. 2010).  Because Deshler was already deceased at the time Plaintiffs filed this action, Plaintiffs should have followed procedures for suing Deshler's estate rather than naming her as a defendant.  The Court therefore grants Plaintiffs leave to amend their complaint to name the proper defendant and accordingly re-attempt proper service as required.  *See McRee v. Goldman*, No. 11-CV-00991, 2011 WL 4831199, at *4 (N.D. Cal. Oct. 12, 2011).

### 3.  Lord & Carter Trust and Trustee Services

Harris and Humphrey also argue for the first time in their reply that the Court should dismiss the Complaint as to Lord & Carter Trust and Trustee Services because the entity named in the Complaint does not exist and has never existed and thus could not have been properly served. Harris and Humphrey argue that to the extent Humphrey is deemed to have accepted service on behalf of "Lord & Carter Trust," the state court judgment collaterally estops Plaintiffs from bringing the instant suit.  ECF No. 25 at 3-4.  For the same reasons that the Court declined to consider Harris and Humphrey's request on behalf of Deshler, the Court similarly finds that a motion to dismiss the Complaint as to Lord & Carter Trust and Trustee Services is not properly before it.  In addition, because the state court judgment is not a final decision for the purposes of collateral estoppel under California law, the state court judgment does not preclude this case from moving forward against Lord & Carter Trust and Trustee Services or Lord & Carter Trust.

Plaintiffs explained in the May 16, 2017 status conference that they named "Lord & Carter Trust and Trustee Services" because they had correspondence from Deshler in which she used that name.  In their case management statement filed on June 9, 2017, Plaintiffs stated that they may amend the Complaint to add the Trust (presumably "Lord & Carter Trust") as a party.  ECF No. 34 at 3.  Liberally construing Plaintiffs' statement as a motion to amend the Complaint, the Court grants Plaintiffs leave to amend to name "Lord & Carter Trust" as a defendant.  *See Kuria v.*

23

*Palisades Acquisition XVI, LLC*, 752 F. Supp. 2d 1293, 1297-98 (N.D. Ga. 2010) (granting motion for leave to amend to name proper defendant because there was "no apparent bad faith, dilatory motive, undue prejudice to [defendant], or other sufficient cause to deny leave to amend").

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Wells Fargo's motion to dismiss Count Nine with leave to amend, DENIES Harris and Humphrey's motion to dismiss, and GRANTS Plaintiffs leave to amend to name the proper defendants in place of non-appearing Defendants Deshler and Lord & Carter Trust and Trustee Services. Plaintiffs shall file any amended complaint within 30 days from the date of this Order.

**IT IS SO ORDERED.**

Dated: September 19, 2017

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

United States District Court
Northern District of California